472 So.2d 320 (1985)
Charles HEMPHILL, et al., Plaintiffs-Appellants,
v.
STATE FARM INSURANCE COMPANY, et al., Defendants-Appellees.
No. 84-536.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1985.
*321 Charles E. Joiner, West Monroe, McKinley & O'Neal, Hodge O'Neal, III, Monroe, for plaintiffs-appellants.
Mayer, Smith & Roberts, Caldwell Roberts, Shreveport; Gaharan & Wilson, Donald R. Wilson, Jena; Gold, Simon, etc., Sam Poole, Jr.; Stafford, Stewart & Potter, Russell L. Potter; Bolen & Erwin, Marsha Hopper and Gregory S. Erwin, Alexandria, for defendants-appellees.
Before GUIDRY, KNOLL and KING, JJ.
GUIDRY, Judge.
On April 14, 1983, a multi-vehicle collision occurred on U.S. Highway 165 in LaSalle Parish. One of the vehicles involved in the accident was a truck and trailer owned by Robert Cloer and being driven by Larry Salter. At the time of the accident, Cloer and Salter were hauling ten oilfield engines to Trout, Louisiana, for C.L. Harvey. Among the parties named as defendants in the three lawsuits filed as a result of this accident were C.L. Harvey and his insurer, Shelter Insurance Company (Shelter).[1] Harvey and Shelter were also third partied by other defendants. In the pleadings referred to, Harvey was alleged to be the employer of Cloer and Salter and therefore vicariously liable for the damages occasioned by their fault. Alternatively, it was alleged that Harvey was independently negligent for hiring Cloer and Salter.
Motions for summary judgment were filed by both Harvey and Shelter in all three cases. In his motions for summary judgment, Harvey contends that there is no genuine dispute as to any fact material to a finding that he is not the employer of Cloer and Salter nor was he negligent for contracting with such individuals. Shelter, in its motion, makes the same contentions as Harvey and, in the alternative, urged that the policies issued by it to Harvey do not provide coverage for any liability which might arise on the part of Harvey as a result of this accident.
Harvey's motion was supported by the introduction of his affidavit and the depositions of Cloer and Salter. Shelter supported its motion by introduction of the policies issued by it to Harvey as well as the affidavit of one of its executives. The opponents to the motion for summary judgment relied upon the depositions of Cloer, Salter and Harvey.
The trial court granted Harvey and Shelter's motions for summary judgment on the basis that Cloer and Salter were not employees or servants of Harvey at the time of the accident. Furthermore, the trial court found that the policies issued by Shelter to Harvey did not cover this accident even if there would have been a finding of vicarious liability on the part of Harvey.
Appeals were taken by the opponents to the motions for summary judgment. Inasmuch as the three lawsuits were based upon common facts, they were consolidated at the trial level. The cases remain consolidated on appeal, and we this day render separate decisions in the companion cases entitled Hemphill v. State Farm Mutual Automobile Insurance Company, 472 So. *322 2d 325 (La.App. 3rd Cir.1985), and Dezendorf v. State Farm Insurance Company, 472 So.2d 325 (La.App. 3rd Cir.1985).
The issues presented on appeal are: (1) Is there a genuine issue of material fact concerning whether Salter and Cloer were servants or employees of Harvey? (2) Is there a genuine issue of material fact concerning Harvey's lack of personal fault? (3) Is there a genuine issue of material fact concerning applicability of the Shelter insurance policies issued to Harvey? For reasons explained below, we answer the first two questions in the negative and thus need not consider the third issue.

EMPLOYER-EMPLOYEE RELATIONSHIP
Masters and employers are answerable for the damages occasioned by their servants, in the exercise of the functions in which they are employed. La.C.C. Art. 2320. A determination as to whether a person's status is that of independent contractor, in which case there is no vicarious liability, or that of mere servant, in which case the employer is vicariously liable for the torts of his employee, depends in great measure upon whether and to what degree the right to control the work has been contractually reserved by the principal. The supervision and control which is actually exercised by the principal is less significant. Arledge v. Royal-Globe Insurance Company, 401 So.2d 615 (La. App. 3rd Cir.1981). In Odom v. Eaves, 311 So.2d 575 (La.App. 3rd Cir.1975), this court stated:
"The law with regard to who is an independent contractor is set out in Hickman v. Southern Pacific Transport Co., 262 La. 102, 262 So.2d 385 (1972), and Amyx v. Henry & Hall, 227 La. 364, 79 So.2d 483 (1955). In those cases the Supreme Court stated that the independent contractor relationship involves a contract between the parties; the independent nature of the contractor's business; and the nonexclusive means the contractor may employ in accomplishing the work. It must also be shown that a specific price for the overall undertaking is agreed upon; that the duration of the undertaking is for a specific time and not subject to termination or discontinuance at the will of either side without a liability for its breach.
In both Hickman and Amyx the court emphasized that the most pertinent inquiry in determining whether a relationship is one of independent contractor or master-servant is `the control over the work reserved by the employer.' Hickman v. Southern Pacific Transport Co., 262 So.2d at 391. The court in Hickman stated further:
`In applying this test it is not the supervision and control which is actually exercised which is significant, the important question is whether, from the nature of the relationship, the right to do so exists.' 262 So.2d at 391."
In the instant case, the pertinent facts, as adduced from the affidavits and depositions, are as follows: C.L. Harvey is in the business of buying and selling oilfield equipment. On April 4, 1983, Harvey traveled to Gladewater, Texas to purchase ten oilfield engines from Robert Spears. Spears and Harvey had conducted business on previous occasions. After the sale of the engines was completed, the discussion turned to how the engines would be transported back to Harvey's yard in Trout, Louisiana. Normally, Spears would transport the equipment purchased by Harvey back to Trout, however, on this occasion, Spears could not do so on account of his vehicles being tied up on other deliveries. Spears suggested that Harvey engage the services of Robert Cloer, another local oilfield equipment businessman, to haul the engines. Harvey contacted Cloer and the latter agreed to make the delivery for a fee of $300.00. Cloer, accompanied by his employee, Larry Salter, arrived at Spears' yard to meet with Harvey. Harvey and Cloer had never met before but had spoken over the telephone once or twice before regarding the possible sale of some equipment. They had never transacted any business prior to that date. Harvey paid Cloer *323 the price agreed upon, i.e., $300.00, by check and proceeded to instruct Cloer as to how to get to Trout, however, Cloer immediately indicated to Harvey that he knew how to get there since he had previously engaged in some oilfield work in that area. Harvey informed Cloer that someone would be at his yard in Trout to unload the engines at 4:00 p.m. Cloer was given a key to the yard. The ten engines were loaded by employees of Spears with the aid of Cloer and Salter. Harvey did not participate in the loading in any way except to drive Salter to another local yard in order to retrieve some chains and locking devices owned by Cloer which were to be used to tie down the engines onto Cloer's trailer. Cloer's trailer was a 30 foot gooseneck trailer being pulled by a one-ton 1981 Chevrolet truck. Cloer and Salter left Gladewater around noon and headed for Louisiana. Along the route, the two imbibed alcoholic beverages. Salter drank a six pack of beer and Cloer, at the very least, a half-pint of whiskey mixed with Coke. After reaching Winnfield, Louisiana, Cloer became sleepy and allowed Salter to take over the driving duties. At approximately 8:00 p.m., Cloer became lost on U.S. Highway 165 near Olla, Louisiana. Salter attempted to make a U-turn on the two laned highway. In doing so, the truck became stuck on the shoulder area with the trailer extended across one or both lanes of Highway 165. Within a matter of minutes, one of the plaintiffs' vehicles struck the trailer which was blocking its lane of travel. For an undetermined reason, one of the engines on Cloer's trailer fell onto the highway. A second vehicle struck the motor. The above facts are without genuine dispute.
In Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Company, 427 So.2d 1152 (La.1983), the Louisiana Supreme Court made the following comments regarding the law on motions for summary judgment:
"The sole purpose for the motion for summary judgment is to determine in advance of trial whether a genuine issue of material fact exists between the litigants. Miller v. East Ascension Tel. Co., 263 So.2d 360 (La.App. 1st Cir.), writs denied, 262 La. 1121, 266 So.2d 430 (1972); cf. Albatross Shipping Corp. v. Stewart, 326 F.2d 208 (5th Cir.1964); see also Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963); Comment, Development of Jurisprudence in Louisiana Relative to Summary Judgment Since 1960, 12 Loyola L.Rev. 128 (1965-66). The summary judgment procedure in Louisiana is set out in La.C.C.P. art. 966 et seq. These provisions are based upon the Federal Rules of Civil Procedure and even though there has developed a substantial body of jurisprudence in the courts of this state regarding the motion for summary judgment, the prior jurisprudence of the federal courts pertaining to the proper use of this device remains helpful and persuasive. Roy & Roy v. Riddle, 187 So.2d 492 (La.App. 3rd Cir.), writs denied, 249 La. 724, 190 So.2d 236 (1966).
La.C.C.P. art. 966 provides that any party may move for a summary judgment at any time, and the mover is entitled to summary judgment in his favor `if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law.' Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980); cf. Fed.Rule Civ.Pro. 56. The burden is on the mover to show clearly that there is not a genuine issue of material fact in dispute, and any reasonable doubt as to the existence of a genuine issue of material fact must be resolved against the mover and in favor of trial on the merits. Thornhill v. Black, Sivalls & Bryson, 394 So.2d 1189 (La.1981); White v. Baker Manor Nursing Home, 400 So.2d 1168 (La.App. 1st Cir.), writs denied, 403 So.2d 68 (La. 1982); cf. Erco Industries, Ltd. v. Seaboard Coast Line Railroad Co., 644 F.2d 424 (5th Cir.1981); Joplin v. Bias, 631 F.2d 1235 (5th Cir.1980).
To satisfy this burden, the mover must meet a strict standard of showing that it *324 is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact. The pleadings, affidavits, and documents of the mover must be scrutinized closely, while those of the opponent to the motion are to be indulgently treated. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981); Mashburn v. Collin, 355 So.2d 879 (La.1977); cf. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)."
Applying these principles to the present case, we find no genuine issue of material fact in dispute as to whether Cloer and Salter were employees of Harvey. After closely scrutinizing the evidence offered by movers and indulgently treating those offered by opponents, we agree with the trial court that Cloer was an independent contractor and as such Harvey is not vicariously liable for damages occasioned by his fault or that of Cloer's employee, Salter.
Appellants argue that by Harvey giving Cloer a key to his yard, instructing Cloer on how to get to Trout and at what time to arrive, a material issue of fact exists as to whether or not a right to control is present. We disagree. First of all, Harvey did not instruct Cloer on how to get to Trout. Both Harvey and Cloer so stated in their depositions. Cloer was merely told where in Trout Harvey's yard was located, not how to get to Trout since Cloer already knew the way. Furthermore, Cloer stated that it was agreed that if Cloer did not arrive by 4:00 p.m., the engines would be unloaded the next day. As far as Harvey giving Cloer a key to his yard, we find this to be more a matter of cooperation than a reservation of control.
Clearly, Harvey exercised no control over Cloer and Salter as to the method to be employed in completing the delivery. Cloer was paid a specific sum of $300.00 to deliver ten motors. There were no provisions regarding payments for additional expenses which Cloer may have incurred. There was no ongoing relationship between Harvey and Cloer.
Accordingly, we find no material fact in dispute which would render summary judgment improper on this issue. There is no doubt but that Cloer was an independent contractor.

INDEPENDENT NEGLIGENCE
Alternatively, appellants argue that Harvey was independently negligent for hiring an independent contractor who he knew or should have known to be irresponsible. One who hires an irresponsible independent contractor may be independently negligent. Evans v. Allstate Insurance Company, 194 So.2d 762 (La.App. 1st Cir. 1967).
In support of their position, appellants argue that Cloer and Salter had been drinking prior to their meeting with Harvey and that Salter had an expired driver's license. Therefore, appellants contend that Harvey was negligent in hiring Cloer and Salter to deliver his oilfield engines.
It should be noted that this issue was raised in the lower court, however, the trial court did not dispose of same in its written reasons for judgment. Our review of the depositions and Harvey's affidavit, in light of the strict burden placed on the mover in a motion for summary judgment, convinces us that Harvey was not negligent in hiring Cloer.
At the outset, we observe that Harvey contracted only with Cloer. There is no dispute that Larry Salter, Cloer's employee, had been drinking before arriving at Spears' yard to meet Harvey. Salter admitted that he drank two beers prior to the meeting. Cloer denied having any liquor until after he left Gladewater with Harvey's engines, however, Salter contradicted this by saying that Cloer had a drink of whiskey before arriving at Spears' yard. Regardless, both Cloer and Salter denied drinking any alcoholic beverages in the presence of Harvey. Additionally, Cloer and Salter stated that there was no liquor in their vehicle at this time. Harvey stated in his deposition that he had no knowledge that Cloer and Salter had been drinking *325 and added that he would not have hired Cloer had he known otherwise. Cloer was recommended to Harvey by Robert Spears. Salter acknowledged in his deposition that he had an expired driver's license.
Considering the summary judgment evidence on this issue in a light indulgently favorable to the opponents, we find no genuine dispute of fact material to a finding that Harvey neither knew nor should have known of Cloer and Salter's drinking. Moreover, we find Salter's expired driver's license, even if known by Harvey, to be insufficient in and of itself to find Harvey independently negligent.
For the above and foregoing reasons, the judgment of the trial court is affirmed at appellants' cost.
AFFIRMED.
NOTES
[1] Also named defendant in the plaintiffs' petitions was "C.L. Harvey Oilfield Equipment Company." Through the process of discovery, it was learned that there is no such entity.