994 So.2d 46 (2008)
Charles ANGLE
v.
Maurice DOW, David L. Dickens, Cox Communications Louisiana, Inc., and Coxcom, Inc.
No. 08-CA-224.
Court of Appeal of Louisiana, Fifth Circuit.
August 19, 2008.
Cyril G. Lowe, Shawn M. Roussel, Hulse & Wanek, New Orleans, Louisiana, for Plaintiff/Appellant.
*47 Richard A. Chopin, Caroline L. Stewart, Metairie, Louisiana, for Defendant/Appellee.
Panel composed of Judges FREDERICKA HOMBERG WICKER, GREG G. GUIDRY, and ROBERT L. LOBRANO.
ROBERT L. LOBRANO, Judge Pro Tempore.
Plaintiff, Charles Angle, appeals the grant of summary judgment in favor of defendant, Cox Communications, Inc. We affirm.
In his Petition, Mr. Angle alleged that on September 27, 2005, he discovered the defendants, David Dickens and Maurice Dow, burglarizing his home in Kenner, Louisiana. Angle alleged that the two men were employed by defendant, Cox Communications of Louisiana, L.L.C. (Cox). According to Angle's Petition, the two men were wearing Cox uniforms and had Cox identification badges, and were driving a Cox bucket truck. Angle had returned to inspect his home following Hurricane Katrina and discovered Dickens inside his home, without his permission, carrying some of Angle's personal property. Angle ordered him out of the home, whereupon he departed with Dow. Angle sued Cox Communications under the theory of respondeat superior, alleging that Cox is responsible for the criminal behavior of its employees Dickens and Dow.
Cox filed a Motion for Summary Judgment, arguing first that Dickens and Dow were not employees of Cox, but rather were employees of Coast to Coast, a subcontractor of one of Cox's independent contractors, Cross Connection Communications, who entered into a Master Construction Agreement with Cox to repair external cables following the passage of Hurricane Katrina. Second, Cox argued that even if Dickens and Dow were employees of Cox, which they denied, their criminal behavior was not in furtherance of their employment or part of Cox's mission, and thus Cox was not liable.
Plaintiff opposed Cox's Motion for Summary Judgment. Following a hearing on the Motion and Opposition, the trial court granted judgment in favor of Cox, dismissing plaintiff's suit with prejudice. The trial court assigned no reasons for judgment. This timely appeal followed.
On appeal, plaintiff argues that material issues of fact remain with respect to Dickens and Dow's employment status and whether their tortious act was the result of or facilitated their employment.

SUMMARY JUDGMENT
Summary judgment will be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). The party bringing the motion bears the burden of proof; however, where the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party's claim. LSA-C.C.P. art. 966(C)(2). Thereafter, if the adverse party fails to produce factual support sufficient to show that he will be able to meet his evidentiary burden of proof at trial, no issue of material fact exists and the moving party is entitled to summary judgment. Id.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Pizani v. Progressive Ins. Co., 98-225 (La.App. 5 Cir. *48 9/16/98), 719 So.2d 1086. The decision as to the propriety of a grant of a Motion for Summary Judgment must be made with reference to the substantive law applicable to the case. Sun Belt Constructors, a Div. of MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350 (La.App. 5 Cir.1988).

EMPLOYMENT STATUS
Cox's first argument was that Dickens and Dow were not employees of Cox, and therefore Cox cannot be held legally responsible for their criminal conduct.
The general rule is that employers are responsible for the damage caused by their employees in the exercise of the functions for which they are employed. La. C.C. art. 2320. However, a principal is generally not vicariously liable for the negligence of an independent contractor. Arroyo v. East Jefferson General Hospital, 06-799 (La.App. 5 Cir. 3/13/07), 956 So.2d 661. Whether or not there is an employeremployee relationship or a principalindependent contractor relationship is a factual determination that must be made on a case by case basis. Id.

Nugent v. On-Call Nursing Agency And Associates Of New Orleans, Inc., 07-1022 (La.App. 5 Cir. 3/25/08), 983 So.2d 128.
The difference between an employment relationship and independent contractor relationship was explained by our Supreme Court in Hickman v. Southern Pacific Transport Company, 262 La. 102, 117, 262 So.2d 385, 390-391 (1972), as follows:
It is well understood by the courts of this State that the term independent contractor connotes a freedom of action and choice with respect to the undertaking in question and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants. The relationship presupposes a contract between the parties, the independent nature of the contractor's business and the nonexclusive means the contractor may employ in accomplishing the work. Moreover, it should appear that the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction, in the performance of the service, of his employer, except as to the result of the services to be rendered. It must also appear that a specific price for the overall undertaking is agreed upon; that its duration is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.
The law further recognizes that inquiry to determine whether a relationship is that of independent contractor or that of mere servant requires, among other factors, the application of the principal test: the control over the work reserved by the employer. In applying this test it is not the supervision and control which is actually exercised which is significant, the important question is whether, from the nature of the relationship, the right to do so exists. (Citations omitted.)
In support of its argument, Cox submitted the Master Construction Agreement, which is the contract between Cox and Cross Connection Communications. This contract defines the relationship between Cox and its independent contractor. Paragraph 15 of this contract states:
15. INDEPENDENT CONTRACTOR RELATIONSHIP: Cox and Contractor intend that the relationship between *49 them created by this Master Agreement is that of independent contractor. No agent, employee, servant or subcontractor of Contractor shall be deemed to be the agent, employee, servant or subcontractor of Cox. Cox is interested only in the results obtained under this Master Agreement; the manner and means of conducting the Work in compliance with the Specifications are under the control of Contractor. None of the benefits provided by Cox to its employees, including, but not limited to, compensation and unemployment insurance, are available from Cox to Contractor or its agents, employees, servants or subcontractors. Contractor will be solely and entirely responsible for its acts and the acts of its agents, employees, servants and subcontractors during the performance of this Master Agreement.
Cox also submitted the affidavit of John Holly, the Vice President of Human Resources of Cox. Holly attested that the Master Agreement was executed on September 26, 2005, and was in effect on the day of Dickens and Dow's alleged criminal conduct. Holly attested that Cox did not employ Dickens and Dow, but rather they were employees of Coast to Coast Cable TV, a subcontractor of Cox's independent contractor, Cross Connection Communications. Holly stated that the work being performed under the Master Agreement consisted of outside work only, and that no persons performing any Cox related work were given any authority, express or implied, to enter any home. Holly stated that Cox's objectives in the work were to restore the integrity of its service lines and to repair wires damaged by Hurricane Katrina.
Plaintiff argues that material issues of fact remain as to Dickens's and Dow's actual employment status and the degree of control that Cox maintained over their actions. Specifically, plaintiff says that Dickens's and Dow's work necessarily involved their entering private property to perform their duties, and that the purpose of serving the master's business "actuated" the servants (Dickens and Dow) and placed them into a position to commit the intentional tort (the burglary). Plaintiff further argues that the two defendants' employment status is unclear because Angle's affidavit, attests that the two men wore Cox clothing and badges and drove a Cox bucket truck and that Holly's affidavit did not address the degree of control that Cox had over their work.
Cox submitted a Supplemental Memorandum in Support of Motion for Summary Judgment, including an affidavit from Donny Arseneaux, Manager of Facilities for Cox, to address plaintiff's contention that Dickens and Dow wore Cox insignia and used a Cox bucket truck. Mr. Arseneaux attested that as non-employees, neither man would have been issued, nor was issued, a Cox badge or clothing, and if they possessed them, they must have acquired them through theft or another means other than being issued by Cox. He also attested that neither man would have been allowed to operate a Cox vehicle, since they were not employees of Cox.[1]
We find that Cox bore its burden of proof regarding the employment status of Dickens and Dow by way of the affidavit of Holly, Cox's Vice President of Human Resources. He was in a position to have knowledge of whether Cox ever employed either Dickens or Dow, and clearly stated that neither man was or had ever been employed by Cox. Further the affidavit of *50 Mr. Arseneaux established that neither Dickens nor Dow was issued Cox insignia nor clothing, and further stated that they would not have been given a bucket truck to use.
We find that there is no material issue of fact with respect to defendants' employment status. They were independent contractors as defined in the Master Construction Agreement. To the extent that the trial court decided the summary judgment on this issue, the court was correct.
Furthermore, assuming that the trial court's decision was predicated on the other issue of whether Dickens's and Dow's actions were motivated by purely personal considerations extraneous to the employer's interest, we find no error in that ruling.[2] There is absolutely no evidence to remotely suggest that burglary is a risk attributable to Cox's business in restoring the outside cable lines damaged by Hurricane Katrina. Entering private property with the intent to steal does not serve the "master's" business of repairing cable lines.
Accordingly, for the reasons assigned, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] We note that the Master Construction Agreement states that Cox would not supply any tools, but would supply "equipment necessary for restoration to network" to the Contractor (Cross Connection).
[2] Fallon v. Sullivan, 94-1927 (La.App. 4 Cir. 2/23/95), 650 So.2d 1232.