MARC E. JOHNSON, Judge.
^Defendants, Danna Doucet, Dane Dou-cet, Dianne Doucet Matthews (“Doueets”), and Lafayette Insurance Company, appeal the judgment of the trial court finding them vicariously liable for damages caused by a fire started by Gammon Enterprises while it performed roofing work. For the reasons that follow, we reverse.

FACTS & PROCEDURAL HISTORY

This lawsuit was filed by Certified Cleaning & Restoration, Inc. (“Certified Cleaning”), against various defendants for payment for work it performed on property located at 3400 Hessmer Ave. in Metair-ie. Certified Cleaning alleged it was hired by Express Food Deli, Inc., d/b/a The Edge Bar & Grill (“The Edge”), to make emergency repairs to the premises due to fire and smoke damage caused by roofing work performed by Stephen Gammon and Gammon Enterprises, L.L.C. | .^collectively “Gammon”). Certified Cleaning claimed it had not been fully paid for its services performed between November 22, 2006 and December 4, 2006, which totaled $45,992.59.
The property at issue was owned by Earl Doucet,[1] who had leased the property to Turf Club, Inc. (“Turf Club”) in November 1997. Turf Club then subleased the premises to The Edge in April 2003. In 2006, Mr. Doucet hired Gammon to perform roofing repairs to the building on the property.[2] While performing roofing repairs on November 21, 2006, Gammon accidentally started a fire causing damage to the building. Unfortunately, Gammon’s liability insurance had lapsed at the time of the accident.
Vincent Maenza, Jr., president of The Edge, testified that Mr. Doucet’s son, Dane, came to the property the day of the fire and told him to do whatever was necessary to get the property back into working condition and to get back into business. Mr. Maenza subsequently contacted Certified Cleaning and arranged for Certified Cleaning to clean the fire and smoke damage caused by the fire.
Daniel Haag, owner of Certified Cleaning, testified he entered into a contract with Mr. Maenza to provide cleaning services to the damaged building. Mr. Haag never spoke to any of the Doueets. Mr. Haag further testified he agreed to hold Mr. Maenza personally liable for only $7,000 of the total charges, with the intent to collect the balance from the responsible party or insurance company. Mr. Haag stated the total invoice for Certified Cleaning’s services was $45,992.59, of which only $7,000 had been paid. Certified Cleaning subsequently sued the Doueets and their liability insurer, Lafayette Ins. Co.; Turf Club[3]; The Edge; and Gammon, for 14the recovery of the balance. The Edge filed a cross-claim against the Doueets, Lafayette *1280 Ins. Co., and Gammon for damages resulting from the fire including loss income, loss of business, out-of-pocket expenses, and payment of undue rent. Additionally, the Doucets and Lafayette Ins. Co. filed a cross-claim against Gammon for contribution. This lawsuit was consolidated with a subsequent lawsuit filed by Certain Underwriters at Lloyd’s London, (“Underwriters”), The Edge’s insurer, for subrogation, in which it sought to recover money it paid to The Edge as a result of the fire.
Trial was held on June 1, 2009. After taking the matter under advisement, the trial court rendered a judgment on April 30, 2010. The trial court found Gammon caused the fire on the property and, therefore, was liable under La. C.C. art. 2315. The trial court also found Gammon was an employee of Mr. Doucet and not an independent contractor. As such, it found the Doucets vicariously liable for the negligence of Gammon. The trial court also found the Doucets independently liable for the negligence of Mr. Doucet as a property owner/lessor in hiring Gammon, which did not have a contractor’s license or liability insurance. The trial court further found Lafayette Ins. Co. liable under the commercial liability and property policy it issued to Mr. Doucet for the property at issue.
Accordingly, the trial court rendered judgment in favor of Certified Cleaning against The Edge,[4] Gammon, the Doucets, and Lafayette Ins. Co., in solido, in the amount of $45,992.59 plus interests from the date of the invoice. Additionally, the trial court rendered judgment in favor of The Edge against Gammon, the Doucets, and Lafayette Ins. Co., in the amount of $90,680.48, for damages The Edge incurred as a result of the fire. The trial court further rendered judgment in favor |aof Underwriters against Gammon, the Doucets, and Lafayette Ins. Co. for $47,775.17, which was the amount Underwriters paid The Edge for damages related to the fire under the insurance policy it issued to The Edge.[5] The Doucets and Lafayette Ins. Co. appeal the judgment.

ISSUES

Appellants raise the following issues on appeal. Appellants first contend the trial court erred in finding the Doucets vicariously liable for the negligence of Gammon. Specifically, the Doucets maintain the evidence showed Gammon was an independent contractor and not an employee of Mr. Doucet and, thus, they are not liable for Gammon’s negligence under the theory of vicarious liability. Appellants next contend that to the extent the trial court found the Doucets independently liable for negligently hiring Gammon, it erred. And, finally, appellants argue that the mutual waiver clause in the commercial lease between Mr. Doucet and the Turf Club precludes liability of the Doucets.

LAW & ANALYSIS

Vicarious Liability

The concept of vicarious liability is codified in La. C.C. art. 2320, which provides that employers are responsible for the damage caused by their employees in the exercise of the functions for which they are employed. However, vicarious *1281 liability does not apply when an independent contractor relationship exists. Angle v. Dow, 08-224, p. 4 (La.App. 5 Cir. 8/19/08), 994 So.2d 46, 48. The distinction between employee and independent contractor status is a factual determination that must be made on a case-by-case basis, which is subject to a manifest error standard of review. Id.; J4H, L.L.C. v. Derouen, 10-319, p. 8 (La.App. 1 Cir. 9/10/10), 49 So.3d 10, 15.
1 fiIn determining whether an independent contractor relationship exists, courts must consider the following factors: (1) whether there is a valid contract between the parties; (2) whether the work being done is of an independent nature, such that the contractor may employ a non-exclusive means in accomplishing it; (3) whether the contract calls for specific piecework as a unit to be done according to the independent contractor’s own methods, without being subject to control and direction of the principal, except.as to the result of the services rendered; (4) whether there is a specific price for the overall undertaking agreed upon; and (5) whether the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385, 390-91 (La.1972); Honeycutt v. Deutschmann, 07-211, p. 4 (La.App. 5 Cir. 1/22/08), 976 So.2d 753, 755.
Vicarious liability mandates strict construction. Roberts v. State, Through Louisiana Health and Human Resources Administration, 404 So.2d 1221, 1225 (La.1981). In Roberts, the Louisiana Supreme Court stated that the single most important factor to consider in determining whether a party is an independent contractor or an employee is “the right of an employer to control the work of the employee.” Id.
The trial court applied the Hickman factors and concluded that Gammon was an employee of Mr. Doucet and not an independent contractor. The trial court found that no contract existed between Gammon and Mr. Doucet for the roofing services. It also determined that Mr. Doucet ultimately had the right of control over the project and that Gammon would have had to perform as requested if Mr. Doucet had exerted his authority. The trial court also found work on the roof was not set for a specific time and could be terminated at will by Mr. Doucet. The trial |7court relied on the fact that Gammon did not continue working on the roof after the fire and did not seek payment of the balance remaining.
We find the trial court was manifestly erroneous in its conclusion that Gammon was an employee of Mr. Doucet. The record shows Mr. Doucet and/or Danna Doucet contacted Gammon and asked him for an estimate to repair the roof. Gammon prepared a written proposal in April 2006 outlining the repairs to be made and estimating the repair costs to be $12,000. A few months later, Danna Doucet contacted Gammon and told him that his father, Mr. Doucet, was satisfied with the proposal and that they would like the job to be done as soon as possible. Gammon began the job in November 2006.
A valid and enforceable contract requires capacity, consent, a certain object, and a lawful cause. The court must find there was a meeting of the minds of the parties to constitute the requirement of consent. Arias v. Albe, 04-26, p. 7 (La.App. 5 Cir. 5/26/04), 876 So.2d 179, 182. The record shows all four elements were met. Thus, there was a valid contract between Gammon and Mr. Doucet for the roofing work.
*1282 Additionally, the record clearly demonstrates that neither Mr. Doucet nor any of his sons controlled Gammon’s work. Dan-na Doucet testified that he did not give Gammon any directions for the job and did not believe his father did either. Although Danna stated his father had probably given direction to contractors over the years, there was no evidence Mr. Doucet did so in this case. We note that a principal can give direction regarding the result of the services to be rendered without changing the relationship from that of an independent contractor to an employee. See Hickman, supra. Stephen Gammon repeatedly testified that he received no instruction from Mr. Doucet regarding how to do the roof repairs. Mr. Gammon further stated that no one told him or his workers what to do and that he |8alone instructed his workers on what to do. Mr. Gammon explained that he provided the tools and trucks to do the job and even had a trash trailer on site. The record shows Gammon performed the roofing repairs without input from Mr. Doucet, and that Mr. Doucet exercised no control over the methods Gammon used to repair the roof. Given these attendant facts and circumstances, Gammon was an independent contractor, and we find the trial court was manifestly erroneous in concluding Gammon was an employee of Mr. Doucet.
The parties all agree that the fire was caused by the negligence of Gammon. A principal is not liable for the offenses committed by an independent contractor while performing its contractual duties unless (1) the work undertaken by the independent contractor is inherently or intrinsically dangerous, or (2) the person for who the work is performed gives express or implied authorization to an unsafe practice or has the right to or exercises operational control over the method and means of performing the work. Villaronga v. Gelpi Partnership Number 3, 536 So.2d 1307, 1310-11 (La.App. 5th Cir.1988), writs denied, 540 So.2d 327 (La.1989) and 540 So.2d 329 (La.1989). There is nothing in the record to indicate the roofing repairs were inherently or intrinsically dangerous. Additionally, the record does not reflect that the Doucets gave express or implied authorization to an unsafe practice or had the right to exercise operational control over the method and means of performing the work.
Accordingly, we find the trial court erred in finding the Doucets vicariously liable for the negligence of Gammon.

Negligent Hiring

In their appellee briefs, appellees contend that even if this Court reverses the trial court’s finding of vicarious liability, the Doucets are still independently liable for negligent hiring. The judgment shows that the trial court not only found the InDoucets vicariously liable but also found them “independently liable for Earl Doucet’s fault for his failure to act reasonably as a property owner/lessor when he hired Gammon.” In their reply brief, appellants assert the trial court’s imposition of negligence on a theory of negligent hiring was dependent on its erroneous finding of an employer-employee relationship between the Doucets and Gammon. Appellants alternatively argue that even if the judgment is construed to impose liability for the negligent hiring of an independent contractor, the trial court erred because the evidence did not show the Doucets knew or should have known Gammon was irresponsible.
One who hires an irresponsible independent contractor may be independently negligent. Hemphill v. State Farm Ins. Co., 472 So.2d 320, 324 (La.App. 3rd Cir.1985). To determine whether a principal is negligent for hiring an irresponsible independent contractor, the court must con *1283 sider the principal’s knowledge at the time of the hiring. Perkins v. Gregory Mfg. Co., 95-1396, p. 7 (La.App. 3 Cir. 3/20/96), 671 So.2d 1036, 1040, writ denied, 96-971 (La.5/31/96), 673 So.2d 1039.
In Perkins, Boise Southern Corporation contracted with Kim Johnson Trucking Company to harvest timber on one of its properties. The trucking company then hired the plaintiff as a tree trimmer. The plaintiff was subsequently injured and filed suit against various defendants. Among other assertions, the plaintiff claimed Boise was negligent in hiring the trucking company because it did not investigate the trucking company’s safety procedures and training. After determining the trucking company was an independent contractor, the Third Circuit concluded there was no evidence to support a finding of negligent hiring by Boise. The court noted that Boise had previously contracted "with the trucking 110company with good results and there was nothing in the record to show negligent hiring practices on the part of Boise.
In Hemphill, supra, the court also determined there was insufficient evidence of negligent hiring. In Hemphill, C.L. Harvey hired Robert Cloer to haul oilfield engines. Cloer’s employee, Salter, was driving the truck and trailer when he was involved in a multi-vehicle collision. The evidence showed Salter had consumed alcoholic beverages before driving and had an expired driver’s license. Additionally, Harvey had never met or had prior business dealings with Cloer or Salter.
In the - resulting lawsuit, Harvey was alleged to be the employer of Cloer and Salter and, therefore, vicariously liable for their negligence. Harvey was also alleged to be independently liable for negligently hiring Cloer and Salter. The court first concluded that Cloer was an independent contractor and, therefore, Harvey was not vicariously liable for damages caused by Cloer or Salter. The court then found no independent negligence on behalf of Harvey under the theory of negligent hiring. The court noted that despite the fact Cloer and Salter had been drinking before meeting with Harvey, there was nothing to show that Harvey knew or should have known of Cloer and Salter’s drinking. The court also stated that even though Salter had an expired driver’s license and even if this information had been known to Harvey, such information was insufficient in and of itself to find Harvey independently negligent.
In the present case, we likewise find no evidence of negligent hiring and, thus, conclude the trial court was manifestly erroneous in its determination that the Dou-cets were independently liable. The record shows the Doucets had used Gammon on prior roofing jobs and there was no indication of any problems with the prior work. In fact, Gammon had worked on the roof at issue prior to |nHurricane Katrina in 2005. Again, there was no indication of any mishaps with the work.
According to Danna Doucet, the proposal Mr. Gammon submitted indicated that he was fully insured, and Danna testified that he relied on that information to assume Gammon was insured. Mr. Gammon testified that at the time he submitted the proposal, he was insured but the insurance had lapsed by the time the fire occurred. There was no evidence in the record regarding when Gammon’s insurance lapsed. Mr. Gammon also admitted that at the time of the fire he did not possess a contractor’s license. He explained that he had obtained a temporary contractor’s license after Hurricane Katrina but then did not follow up and obtain the license.
Based on these facts, we find the trial court erred in finding the Doucets negligently hired Gammon. Gammon had per *1284 formed several roofing jobs for the Dou-cets prior the one at issue without incident. Gammon was insured at the time of the bid for the job and there was no evidence as to when the insurance lapsed. There is no indication that the Doucets knew or should have known Gammon was not insured at the time of hiring. Further, in this case, the mere fact Mr. Gammon did not possess a contractor’s license at the time of the incident is not, in and of itself, sufficient to find the Doucets independently negligent in hiring Gammon. Therefore, we find the trial court erred in finding the Doucets independently liable under the theory of negligent hiring.
Because we find the Doucets are not vicariously liable or liable under the theory of negligent hiring, we need not address the issue of the mutual waiver clause in the lease.

I,^DECREE

For the foregoing reasons, we reverse that portion of the trial court’s April 80, 2010 judgment finding the Doucets vicariously liable and independently liable for negligent hiring. Appellees are to bear the costs of this appeal.

REVERSED

.Mr. Doucet died after the lawsuit was filed and his heirs, Danna Doucet, Dane Doucet, and Dianne Doucet Matthews, were substituted as parties-defendants.

. Gammon submitted a proposal for the roofing repairs to Mr. Doucet in April 2006 and performed the repairs in November 2006.

. All claims against Turf Club were dismissed without prejudice prior to trial.

. The trial court gave The Edge a credit for the $7,000 it had already paid to Certified Cleaning and ruled The Edge was entitled to indemnity from the Doucets and Lafayette Ins. Co. because of the handwritten agreement between Certified Cleaning and Mr. Maenza that The Edge would only be liable for $7,000 of the charges.

. Underwriters paid its insurance policy limits of $50,000 minus the deductible owed by The Edge.