# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 24-70


**MARTHA HOLLEMAN & MIKE HOLLEMAN**

**VERSUS**

**GOLDEN NUGGET LAKE CHARLES, LLC, ET AL**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2016-2171
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**D. KENT SAVOIE**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Shannon J. Gremillion, D. Kent Savoie, and Candyce G. Perret, Judges.


**REVERSED AND REMANDED.**

**Kevin L. Camel**
**Cox Cox Filo Camel Wilson & Brown, LLC**
**723 Broad Street**
**Lake Charles, Louisiana 70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Martha Holleman**
    **Mike Holleman**

**Taylor S. Carroll**
**Williams Anderson Ryan & Carroll, L.L.P.**
**9241 Bluebonnet Boulevard, Suite A**
**Baton Rouge, Louisiana 70810**
**(225) 412-7121**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Bergman, Walls & Associates, Ltd.**

**SAVOIE, Judge.**

Plaintiffs Martha and Mike Holleman appeal the judgment of the trial court, granting the Motion for Summary Judgment filed by Defendant Bergman Walls & Associates, Ltd. (Bergman Walls) and dismissing the case with prejudice. For the following reasons, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On July 5, 2016, Martha Holleman was injured when she slipped and fell on wet travertine tile while walking around the pool area of the Golden Nugget Casino and Resort (Golden Nugget) in Lake Charles, Louisiana. In addition to filing suit against Golden Nugget, Plaintiffs sued Bergman Walls as the architect of record for the design of the casino.[1] Plaintiffs alleged that the tile did not have the proper coefficient of friction for wet areas and did not comply with the applicable building codes.

On March 19, 2021, Bergman Walls filed a Motion for Summary Judgment, alleging that Plaintiffs could not carry their burden of proof as to liability. The trial court granted the motion after denying Plaintiffs' motion to strike, which was based on a notice issue. Plaintiffs appealed. A panel of this court vacated the judgment of the trial court, granted Plaintiffs' motion to strike the motion for summary judgment from the record, and remanded the case to the trial court for further proceedings.

On September 13, 2023, Bergman Walls filed another Motion for Summary Judgment into the record, again alleging that Plaintiffs could not carry their burden of proof. Bergman Walls specifically argued that it was not liable for the mistakes

---

[1] Plaintiffs settled their claims against Golden Nugget, leaving only Bergman Walls as a defendant herein.

of the independent contractor, who Bergman Walls argued was responsible for the construction of the pool area. After a hearing on October 12, 2023, the trial court ruled "that [Bergman Walls] is not solidarily liable for the alleged fault of Defendant's independent contractors pursuant to La. C.C. art. 2324." Thereafter, Plaintiffs filed this appeal.

## STANDARD OF REVIEW

In *Pollock v. MDA Consultants, L.L.C.*, 22-540, p. 7 (La.App. 3 Cir. 2/1/23), 362 So.3d 929, 934, *writ denied*, 23-551 (La. 6/7/23), 361 So.3d 976, this court explained:

> The summary judgment procedure is expressly favored in the law and "is designed to secure the just, speedy, and inexpensive determination of every action[.]" La.Code Civ.P. art. 966(A)(2). Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Duncan v. U.S.A.A. Ins. Co.*, 06-363 (La. 11/29/06), 950 So.2d 544. "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

## LAW AND DISCUSSION

The trial court granted the motion for summary judgment and dismissed Plaintiffs' case after finding that landscape architectural firm, Lifescapes International (Lifescapes) was an independent contractor of Bergman Walls. "Under Louisiana law, a principal is generally not liable for the offenses committed by an independent contractor while performing its contractual duties." *James v. Christus Health Cent. La.*, 19-775, p. 5 (La.App. 3 Cir. 8/12/20), 305 So.3d 393, 398, *writ denied*, 20-1099 (La. 11/10/20), 303 So.3d 1034. "The distinction between employee and independent contractor status is a factual determination that must be made on a case-by-case basis[.]" *Certified Cleaning &*

*Restoration, Inc. v. Lafayette Ins. Co.*, 10-948, p. 5 (La.App. 5 Cir. 6/14/11), 67 So.3d 1277, 1281, *writ granted in part and remanded on other grounds,* 11-2174 (La. 11/18/11), 75 So.3d 466. In the present case, Bergman Walls bears the burden of proving the independent contractor status of Lifescapes. *See James*, 305 So.3d 393.

In *Espinosa v. Accor North America, Inc.*, 14-1276, pp. 9–10 (La.App. 4 Cir. 7/8/15), 174 So.3d 123, 129–30, the fourth circuit court of appeal explained:

> "Under the provisions of La. C.C. art. 2320, '[m]asters and employers are answerable for the damage occasioned by servants and overseers, in the exercise of the functions in which they are employed.' " *Marchetta ex rel. Marchetta v. CPC of Louisiana, Inc.,* 99–0485, p. 6 (La.App. 4 Cir. 3/22/00), 759 So.2d 151, 155, *quoting* La. C.C. art. 2320. "However, vicarious liability does not apply when an independent contractor relationship exists." *Marchetta,* 99–0485, p. 6, 759 So.2d at 155. The court considers the following factors to determine if an independent contractor relationship is present:
>
>> (1) whether there is a valid contract between the parties; (2) whether the work being done is of an independent nature, such that the contractor may employ a non exclusive means in accomplishing it; (3) whether the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to control and direction of the principal, except as to the result of the services rendered; (4) whether there is a specific price for the overall undertaking agreed upon; and (5) whether the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.
>
> *Certified Cleaning & Restoration, Inc. v. Lafayette Ins. Co.,* 10–948, p. 6 (La.App. 5 Cir. 6/14/11), 67 So.3d 1277, 1281. "However, the most important test in determining whether or not an independent contractor relationship exists involves the employer's control over the work." *Morales v. Davis Bros. Const. Co.,* 94– 0902, p. 4 (La.App. 4 Cir. 12/15/94), 647 So.2d 1302, 1305.

In *James*, 305 So.3d 393, a hospital visitor brought a slip and fall action against the hospital, alleging that her fall was caused by liquid on the hallway

3

floor. The hospital argued that the housekeeping company it hired to clean and maintain the hospital was responsible for the plaintiff's injuries. Specifically, the hospital claimed the housekeeping company was its independent contractor, which absolved the hospital of liability. After trial, the trial court found no negligence on the part of the hospital, finding the housekeeping company was the hospital's independent contractor and was solely responsible for the accident. The appellate court reversed, concluding that the trial court could not determine the degree of control the hospital had over the housekeeping company because the contract between the two was never entered into the record. Because the hospital had the burden of proving independent contractor status, the appellate court rendered judgment in favor of the plaintiff.

Similarly, in the present case, the contract between Bergman Walls, the architect, and Lifescapes, the landscape architect, is not filed in the record. The contract between Bergman Walls and the owner of the project is attached as an exhibit to the motion for summary judgment. Plaintiffs argue that this contract proves that Bergman Walls was responsible for the actions and decisions of Lifescapes.

On March 14, 2012, Bergman Walls entered into a Design Services Agreement with the owner of the Golden Nugget Casino and Resort, Ameristar Casinos, Inc. It states, in pertinent part:

### ARTICLE I
### ARCHITECT'S RESPONSIBILITIES

#### Section 1.1  Architect's Services

The Architect represents that it is, and each and all of its consultants shall be, properly licensed in the State of Louisiana and is experienced in the design and preparation of construction documents for casinos, hotels, garages and other related facilities in connection

4

with resort, gaming and entertainment projects. In providing services under this Agreement, the Architect will perform in a manner consistent with that degree of care and skill ordinarily exercised by members of the same profession on projects substantially similar to the Project and with the same experience as Architect. The Architect's services consist of those services performed by the Architect, Architect's employees, Architect's consultants, and any other services normally incurred in the normal course of business of providing the Basic Services set forth in this Agreement with regard to the Project, including without limitation rendering a complete set of Construction Documents.

. . . .

# ARTICLE 4
# ARCHITECT OF RECORD AND CONSULTANTS

## Section 4.1  Architect of Record

Owner understands and agrees that Architect may enter into other architectural contracts as needed for the full completion of the Work, and all such other contracts shall be at the sole cost and responsibility of the Architect as a part of Basic Services and shall be with consultants mutually acceptable to Architect and Owner.

## Section 4.2. Consultants

(a)    The Architect shall retain, as part of the Basic Fee, and as part of the Architect's Basic Services, professional and licensed consultants ordinarily and necessarily retained to provide architectural services to design a project of the size and scale of the Project. The services of such consultants shall include but are not limited to the following services when required to complete the Project, and the individual Subcontractors for the following disciplines, with their address and contact information, designated representative, license number and stated discipline, are set forth on Exhibit G attached hereto:

. . . .

Landscape

. . . .

(b)    The retention of the aforesaid consultants shall not diminish or reduce the rights, obligations or duties of the Architect under this Agreement.

. . . .

**ARTICLE 5**
**SCOPE OF ARCHITECTS SERVICES**

**Section 5.1 Definition of Basic Services**

(a)     The Architect's Basic Services are comprehensive and include all architectural services required to provide the necessary construction documentation and administration for a successful Project, including without limitation the services described in Sections 5.1 through 5.6 and elsewhere in this Agreement and include but are not limited to such other structural, mechanical/electrical services normally performed by an architect or engineer employed to provide design services for a Project of this size and nature, and based on Owner's program and the Guaranteed Maximum Price Premises and Assumptions and the GMP. . .

. . . .

(d)     The Architect shall be responsible for the coordination of its services, including its Drawing and Specifications, with the Drawings and Specifications of its consultants, including the incorporation of the mechanical, plumbing, electrical, security, low voltage and other drawings and specifications of, and directing, all consultants retained or engaged by or through the Architect and at all times perform its services and act with the normal and customary degree of care and skill used by members of the architectural profession practicing under similar conditions at the same time and locality and on projects of similar size, scope and complexity. Architect shall also cooperate and coordinate its Drawings and Specifications with, and incorporate the work of, all consultants employed by Owner in connection with the Project, and with other architects, engineers or others employed by the Owner or any other party for work related to the overall Project. Notwithstanding the foregoing, the coordination by the Architect is not intended to absolve or release contractors or other design professionals from complying with their respective standards of care. Lastly, the Architect is not responsible for errors and omissions of consultants it does not retain, except to the extent of any error or omission that was known to Architect, or reasonably should have been discovered by Architect in the performance of this Agreement, and was not timely disclosed in writing to Owner.

Plaintiffs argue that, based on the Design Services Agreement, Bergman Walls agreed to be responsible for the entirety of the Golden Nugget project, including design, its consultants, plans and specifications, and any and all architectural services needed for the full completion of the job.

6

Plaintiffs further contend that Bergman Walls breached its duty as architect of record. Plaintiffs maintain that, under Louisiana law, the architect of record is legally responsible for ensuring that the design and construction of the project meets the building codes. In support of this contention, Plaintiffs cite 46 LAC Pt I, § 1307 (emphasis added), which states:

> A. It is recognized that in certain fields of practice there is a broad overlap between the work of architects and engineers. This is particularly true in the field of buildings and similar structures. It is recognized that an architect, who has complied with all of the current laws of Louisiana relating to the practice of architecture has a right to engage in activities properly classifiable as professional engineering insofar as it is necessarily incidental to his work as an architect. Likewise, it is recognized that the professional engineer, who has complied with all of the current laws of Louisiana, and is properly registered in that branch of engineering for which he may be qualified, has a right to engage in activities classifiable as architectural insofar as is necessarily incidental to his work as an engineer. **Furthermore, the architect or the professional engineer, as the case may be, shall assume all responsibility for compliance with all laws or ordinances relating to the designs of projects with which he may be engaged.**

On November 9, 2012, Bergman Walls filed a Design Supervision Statement with the City of Lake Charles. It states:

> **This is to advise that I am a registered Architect or Engineer duly licensed in the State of Louisiana, and that in my professional opinion the plans submitted on the above referenced project conform to the provisions of Section 6-35 et seq, of the Lake Charles Code of Ordinances, constituting the Standard Building Code, as revised, and all other pertinent laws or ordinances including but not limited to the Comprehensive Zoning Ordinance, and state and local Fire Codes as to egress, type of construction, general arrangement, fireproofing and structural design.**
>
> **I further certify that throughout the construction of the above referenced project, periodic on-site visits shall be made by myself or my agents, (Licensed Architect or Engineer) to help insure to the best of our ability that the structure will be erected in accordance with the approved plans and the requirements of the 2009 International Building Code as revised and in accordance with all other pertinent laws and ordinances, including but not limited to the work on foundation, footings, framework, and the**

7

**exterior and interior envelope. If for any reason, I do not inspect or plan to inspect this building or structure during the course of construction, I will notify the Building Official immediately by a certified letter.**

The lack of a contract between Bergman Walls and Lifescapes makes it impossible for this court to decide the independent contractor status of Lifescapes. We cannot weigh the factors nor determine Bergman Walls' control over Lifescapes' work. Further, the Design Services Agreement entered into by Bergman Walls and the Design Supervision Statement create genuine issues of material fact as to the responsibility of Bergman Walls in this matter. For these reasons, the trial court's granting of Bergman Walls' motion for summary judgment is reversed, and the case is remanded to the trial court for further proceedings.

## DECREE

The judgment of the trial court, granting the Motion for Summary Judgment filed by Defendant Bergman Walls & Associates, Ltd. and dismissing the Hollemans' case with prejudice is reversed. This matter is remanded to the trial court for further proceedings. All costs of this appeal are assessed to Bergman Walls.

**REVERSED AND REMANDED.**