671 So.2d 1036 (1996)
Larry Wayne PERKINS, et al., Plaintiff-Appellant,
v.
The GREGORY MFG. CO., Defendant-Appellee.
No. 95-01396.
Court of Appeal of Louisiana, Third Circuit.
March 20, 1996.
*1037 John Taylor Bennett, Marksville, Roy Seale Halcomb Jr., Alexandria, C. Richard Oren, Anthony F. Salario, Baton Rouge, for Larry Wayne Perkins et al.
Donald A. Hoffman, Paul J. Politz, New Orleans, for The Gregory Manufacturing Company et al.
Henry Gregory Walker Jr., James Morgan Passman, Alexandria, for Scott Truck & Tractor, et al.
H.O. Lestage III, DeRidder, for Boise Cascade Inc.
Albin Alexandre Provosty, Alexandria, for Blount, Inc.
Before COOKS, DECUIR and GREMILLION, JJ.
GREMILLION, Judge.
Larry Wayne Perkins, appeals the trial court's granting of Boise Cascade Corporation's motion for summary judgment, dismissing all claims against it. After reviewing the record in its entirety, we affirm finding no genuine issue of material fact existed and that Boise was entitled to judgment in its favor as a matter of law.

FACTS
On February 27, 1987, Boise Southern Corporation contracted with Kim Johnson Trucking Company to harvest timber on one of its properties.[1] Kim Johnson Trucking then either contracted with or hired George Davis to supply the saws and tree trimmers. Davis hired Perkins as a tree trimmer. The harvesting of the timber began on March 2, 1987. A few hours after the commencement of this operation, a tree, felled by a directional shear attached to a hydro ax, fell on Perkins and he suffered injuries to his shoulder, arm, and brachial plexus. On March 1, 1988, Perkins filed suit against Gregory Manufacturing Company, the manufacturer of the directional shear, and Scott Truck and Tractor Company, the seller of the shear. On December 13, 1994, Perkins amended his petition naming Omark Industries and/or Blount, Inc., the manufacturer of the hydro ax, and Boise Cascade Corporation, the owner of the tract of land. In the amending petition, Perkins alleged that Boise was negligent of the following acts:
(a) That Boise owned the property, the timber and the mill involved with this timber project and that it was negligent in failing to hire competent personel *1038 to conduct this dangerous timber project.
(b) That Boise failed to properly inspect and supervise its project.
(c) That Boise failed to properly inspect and supervise the equipment, the education, and training given to the employees by the persons paid by Boise, and any contractors retained by Boise.
(d) That Boise knew or should have known that the persons hired to conduct this timber operation had absolutely no training or educational program or safety program and that Boise had a duty to implement a safety and educational program.
(e) That Boise failed to properly follow governmental regulations, including OSHA regulations, and that said violation was a cause in fact of the accident and the injuries to Larry Wayne Perkins.
(f) That Boise knew or should have known of the use of the directional shearer and that it failed to inspect the shear and failed to warn or implement a policy to warn of dangers associated with the use of the directional shear.
(g) That Boise allowed work to be conducted with use of an inherently dangerous machine.
On April 28, 1995, Boise filed a motion for summary judgment asserting that because Perkins was an employee of Kim Johnson Trucking, an independent contractor, it is not liable for his injuries. On June 28, 1995, a hearing was held and the trial court granted Boise's motion and dismissed Perkins' claim. A motion for a new trial was filed and was subsequently denied. Perkins appealed alleging the following:
I. Whether the trial judge erred in granting Boise's motion for summary judgment on a holding that Kim Johnson Trucking Company was an independent contractor, therefore, precluding liability.
II. Whether the trial judge erred in holding that Boise was not negligent in causing the plaintiff's injuries.
III. Whether OSHA standards specifically directed to logging industry safety were applicable to Boise's actions or inactions.

SUMMARY JUDGMENT
Appellate courts review summary judgments de novo applying the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). Summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966. Facts are material if they determine the outcome of the legal dispute. South Louisiana Bank v. Williams, 591 So.2d 375 (La.App. 3 Cir. 1991), writ denied, 596 So.2d 211 (La.1992). The determination of the materiality of a particular fact must be made in the light of the applicable substantive law. Sun Belt Constructors v. T & R Dragline Service, Inc., 527 So.2d 350 (La.App. 5 Cir.1988). Documents supporting the moving parties position are closely scrutinized while those of the party opposing are indulgently treated. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981). A party opposing a motion for summary judgment cannot rely on the bare allegations of their pleadings but must respond by affidavits detailing facts that show the existence of a genuine issue. La.Code Civ.P. art. 967.

INDEPENDENT CONTRACTOR STATUS
The legal relationship between Boise and Kim Johnson Trucking is determined from the contract creating the relationship and from their intentions in establishing and maintaining that relationship, as exhibited in its performance and surrounding circumstances. Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (La.1972). To attain the status of an independent contractor, it must be established *1039 that a valid contract exists between the parties and that the contract calls for specific piece work as a unit which can be accomplished by non-exclusive means. Id. In carrying out the contractual obligation, the independent contractor must be able to employ its own methods free from the control and direction of the principal, except as to the desired results. Id. Furthermore, the contract must set a specific price for the overall undertaking, provide a specific time or duration in which the undertaking must be completed, and not be subject to termination at the will of either party without that party being subject to liability for breach. Id. Of primary concern, however, is whether the principal retained the right to control the work. In ascertaining the level of control retained by the principal, the actual control exercised is not as important as the right to control. Smith v. Crown Zellerbach Corp., 486 So.2d 798 (La.App. 3 Cir.), writ denied, 489 So.2d 246 (La.1986).
The portions of the contract between Kim Johnson Trucking and Boise Southern pertinent to the analysis concerning the independent contractor status of Kim Johnson Trucking read as follows:
* * * * * *
11. CONTRACTOR shall select and pay his own agents, servants, employees, and subcontractors for the performance of the duties assigned by him to them in the performance of this contract. Such agents, servants, employees and subcontractors shall not be subject to any orders, directions, or control of BOISE, but shall receive instructions from and be solely responsible to the CONTRACTOR. It is the specific intention of BOISE and the CONTRACTOR that the relationship between them shall be contractee and independent contractor and that no relationship of master and servant shall exist as between BOISE and the CONTRACTOR, or between BOISE and any agent, servant, employee or subcontractor of the CONTRACTOR and BOISE shall have no right to control the time, manner or method of doing the work. BOISE shall, however, have the right to inspect CONTRACTOR'S operations hereunder for the sole purpose of determining whether or not such operations are being conducted in accordance with the terms and conditions herein set forth, BOISE shall forthwith notify the CONTRACTOR or CONTRACTOR'S designated representative on the job of the fact, in writing, specifying the particulars wherein CONTRACTOR is not in compliance. Upon receipt of such notice of non-compliance, CONTRACTOR or his designated representative shall, within the time stated in said written notice, correct his operations or to conform to the terms and provisions hereof, within the time stated in said written notice, then BOISE may, at its option, declare this contract terminated and void.
12. It is expressly understood by the parties that time is of the essence of this agreement, and CONTRACTOR agrees faithfully to perform all of his obligations hereunder. If the CONTRACTOR shall default in, or fail fully and completely to perform his obligations within the time stated, BOISE may hold the CONTRACTOR responsible for any damage suffered as a result of such delay or default.
* * * * * *
14. BOISE shall in no way be liable for any injury or damage done or occasioned by the actions and operation of CONTRACTOR, its agents, servants, employees and subcontractors under this contract, and CONTRACTOR binds and obligates himself to pay and satisfy any and all claims arising on account of his operations, whether caused by injuries to his employees or other persons of for damages resulting to any type of property, and to save and hold harmless BOISE on account of any such claim.
Under these provisions, the only control retained by Boise is the right to periodically inspect the operations to ensure that the contract specifications are being met. The tenor of these inspections was detailed by Terrance David McCay, a forester employed by Boise since 1983. In his deposition, McCay testified that a forester would inspect the job site to make sure that the timber was *1040 being cut to the contractual specifications and that other aspects of the contract were being adhered to. He also stated that during these inspections, the forester would make a cursory inspection of the crew to make sure they were wearing protective gear such as hard hats, goggles, steel toed boots, and similar personal safety equipment. If a violation was found in either case the forester could present a written violation to the contractor or their representative, and occasionally, suspend operations. However, inspections of this nature do not rise to the level of control necessary to vitiate the status of independent contractor. What is necessary to impute liability on the principal is a showing of control over the step by step process of accomplishing the job. Smith, 486 So.2d 798. Under the terms of the contract Boise had no authority to order, direct, or control the contractor's employees, nor could Boise control the time, manner, or method of doing the work. Boise's only recourse for non-compliance with the provisions of the contract was to notify the contractor in writing of the non-compliance and allow the contractor to timely correct the non-compliance. In the instant case, the accident occurred but a few hours into the job and well before Boise could have had an opportunity to inspect the job site and make a written notice of non-compliance. Thus, Perkins has tendered no evidence that would impose liability on Boise.

BOISE'S NEGLIGENCE
In the alternative, Perkins contends that Boise is liable for his injuries because it was negligent in hiring Kim Johnson Trucking and because it failed to ensure that Kim Johnson Trucking knew and understood the applicable Occupational Safety and Health Act (OSHA) regulations.
Perkins claims that Boise was negligent in not investigating the safety procedures and training of its contractor, Kim Johnson Trucking. By failing to do so, Perkins suggests that Boise failed to provide workers such as him with a safe place to work. To support this contention, Perkins cites the case of Donavan v. Jones, 26,883 (La.App. 2 Cir. 6/21/95); 658 So.2d 755, writ denied, 95-1786 (La. 11/3/95); 661 So.2d 1379. In Donavan, the plaintiff was employed by BE & K Construction Company who was a contractor for Riverwood International for the purposes of renovating one of Riverwood's facilities. Donavan was injured while walking from the parking lot provided for the contractor to the job site located across a five lane highway. The court found that Riverwood was negligent in failing to provide the contractor's employees with a safe place to work. However, that scenario is distinguishable from the present case. The harm that was caused Donavan was extrinsic from job related risks. Riverwood, the principal, had a duty to provide a safe and protected method for the contractor's employees to cross a busy, five lane road. By failing to provide a safe method, Riverwood violated the duty it owed to the contractor's employees to provide a safe place to work.
In the case sub judice, the harm that befell Perkins, a tree fell on him, is a danger inherent with the job of a tree trimmer and a risk associated with a logging operation. In a principal-independent contractor relationship, the principal does not owe a duty to protect the contractor's employees from risks inherent to the job.
In order for Boise to be negligent for the hiring of Kim Johnson Trucking, one must look to the employer's knowledge at the time of the hiring. Guillory v. Conoco, Inc., 521 So.2d 1220 (La.App. 3 Cir.), writ denied, 526 So.2d 801 (La.1988). The testimony revealed that Boise had contracted with Kim Johnson Trucking previously with good results and that Kim Johnson Trucking had experienced only one on-the-job, lost time accident prior to the incident involving Perkins. There is no evidence in the record to demonstrate negligent hiring practices on the part of Boise; therefore, we cannot find that Boise was negligent in contracting with Kim Johnson Trucking.
Perkins asserts that Boise was negligent in failing to make sure that Kim Johnson Trucking knew and understood the applicable OSHA regulations. Contract provision 17 reads as follows:
The Contractor shall neither require nor permit any person involved in the performance *1041 of this contract to work under working conditions which are unsanitary, hazardous or dangerous to their health of safety. Contractor shall comply with all applicable federal, state and local statutes, rules of law, (OSHA) regulations, and all established safety rules and practices of Boise.
The contractor shall inspect the area where work is being performed at least once a week to ensure that the safety conditions and requirements set forth herein are followed. Boise shall have the right to make such unscheduled inspections as it may deem necessary to insure compliance with this paragraph.
Under the terms of the instant contract, it is the contractor's responsibility to oversee the contract provisions regarding safety procedures and OSHA regulations. Perkins' assertion would require Boise to become directly involved in the day to day operations of its contractor thereby eliminating the existence of the principal-independent contractor relationship. The purpose behind contracting is because the principal cannot or will not engage themselves, for whatever reason, in the work contracted out. We can find no basis for requiring the principal to become that entangled in the operations of its independent contractor.

CONCLUSION
For the foregoing reasons, we affirm the ruling of the trial court dismissing the claim of Larry Wayne Perkins against Boise Cascade Corporation. All costs of this appeal are assessed against the plaintiff-appellant.
AFFIRMED.
NOTES
[1] Boise Southern Corporation is now known as Boise Cascade Corporation.