# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 15, 2016

No. 15-30216

Lyle W. Cayce
Clerk

LARRY S. DRAGNA, individually and on behalf of his minor child, A.D.;
TRISH L. DRAGNA, individually and on behalf of her minor child, A.D.,

      Plaintiffs - Appellants

v.

KLLM TRANSPORT SERVICES, L.L.C.,

      Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:12-CV-449

Before PRADO, SOUTHWICK, and GRAVES, Circuit Judges.

PER CURIAM:*

Larry Dragna suffered injuries in a motor vehicle accident with a tractor-trailer. He and his wife sued KLLM Transport Services, L.L.C., under theories of joint venture, vicarious liability, and negligent hiring of an independent contractor. The district court entered summary judgment for KLLM Transport Services on all claims. The Dragnas timely appealed. We AFFIRM.

---

     * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30216

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2011, the driver of a tractor-trailer hit Larry Dragna's vehicle, causing Dragna injuries. The driver worked for A&Z Transportation, Inc. He was en route to transport a freight load from Louisiana to Michigan.[1] A&Z had been hired for this load by KLLM Logistics. KLLM Logistics had selected A&Z because a related division, KLLM Transport Services, was originally responsible for the load under a contract with BASF Chemical but could not accommodate it at that time.

Prior to the accident, KLLM Logistics had hired A&Z to transport loads in March and June 2011 without incident. Before selecting A&Z in March, KLLM Logistics followed its selection policy by reviewing A&Z on Carrier411. Carrier411 is a transportation industry website providing information about motor carriers such as their insurance coverage and safety ratings. The Carrier411 report showed A&Z was "unrated" for safety, which meant the Department of Transportation had not yet conducted a safety audit of A&Z. There are four safety ratings: unrated, unsatisfactory, conditional, and satisfactory. KLLM Logistics only hires motor carriers that are "satisfactory" or "unrated." KLLM Logistics also reviewed Carrier411 before selecting A&Z for the BASF load in November, although it did not download the report. A&Z was still "unrated."

Carrier411 also showed A&Z's BASIC[2] scores, which are distinct from a safety rating. The Federal Motor Carrier Safety Administration implemented a program called "Compliance, Safety, Accountability" in December 2010, which included a Safety Measurement System and BASIC scores. The BASIC

---

[1] The full name of KLLM Logistics Services is KLLM Transport Services d/b/a KLLM Logistics Services. The parties dispute whether KLLM Transport Services and KLLM Logistics Services are one entity or separate entities. That disagreement does not impact our analysis. For simplicity, we refer to the two as related "divisions."

[2] Behavior Analysis and Safety Improvement Categories.

2

No. 15-30216

scores track motor carrier performance in a variety of areas like unsafe driving, driver fitness, and vehicle maintenance. They range from zero to one hundred, with a higher score reflecting worse past performance.

The parties agree that when KLLM Logistics checked Carrier411 in November 2011, three of A&Z's scores were above the threshold that indicated problems in a category: a score for unsafe driving of 83.9, for fatigued driving of 82.1, and for maintenance of 94.8. Nonetheless, no federal regulations advised KLLM Logistics not to hire carriers with such BASIC scores or which were "unrated" as to safety. As an internal policy, KLLM Logistics did not select a motor carrier with three troublesome BASIC scores until it had discussed the scores internally or with the carrier. There is no evidence that KLLM Logistics followed or failed to follow this policy in selecting A&Z.

The Dragnas sued the driver of the tractor-trailer, A&Z, and A&Z's insurer for Larry Dragna's injuries in Louisiana state court. The insurer removed the case to federal court on the basis of diversity jurisdiction. The Dragnas later added KLLM Transport and others as defendants. The Dragnas settled with all of the defendants except KLLM Transport. Both the Dragnas and KLLM Transport moved for summary judgment on the Dragnas' claims that KLLM Transport was liable under theories of joint venture, vicarious liability, and negligent hiring of an independent contractor. The district court entered summary judgment for KLLM Transport on all three of the Dragnas' claims. The Dragnas timely appealed. They seek a favorable judgment here or at least our reversal and remand for further proceedings.

## DISCUSSION

We review the district court's grant of summary judgment *de novo* and apply the same standards as the district court. *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir. 2005). Summary judgment is proper when "the movant

No. 15-30216

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We view "the evidence and all factual inferences . . . in the light most favorable to the [non-movant] and all reasonable doubts about the facts are resolved in favor of the" non-movant. *Baker*, 430 F.3d at 753.

We apply the substantive law of Louisiana in this diversity case. *See American Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 328 (5th Cir. 2001). We are bound by Louisiana's highest court's interpretation of Louisiana law. *See id.* If that court has not spoken on an issue, we may rely on lower state court opinions to the extent they are persuasive. *See id.* at 328–29.

## I.     *Joint Venture Liability*

Under Louisiana law, a joint venture requires: (1) "[a] contract between two or more persons"; (2) "[a] juridical entity or person is established"; (3) "[c]ontribution by all parties of either efforts or resources"; (4) contributions "in determinate proportions"; (5) a "joint effort"; (6) "a mutual risk [of] losses"; and (7) "a sharing of profits." *Cajun Elec. Power Coop., Inc. v. McNamara*, 452 So. 2d 212, 215 (La. Ct. App. 1984). Joint venturers also hold "an equal right to direct and govern the movements and conduct of each other." *Crutti v. Frank*, 146 So. 2d 474, 479 (La. Ct. App. 1962).

The Dragnas' evidence does not create a genuine dispute of material fact about a joint venture between KLLM Transport and A&Z. They have not shown proportionate contributions, a joint effort, a sharing of profits, or a mutual risk of losses. A&Z used its own resources to transport the BASF load. KLLM Logistics placed all the risk of loss on A&Z in the parties' contract. A&Z did not share in any profits made, but instead was paid in exchange for the completion of its performance. Neither division of KLLM and A&Z had "an

4

No. 15-30216

equal right to direct and govern" the other's activity because A&Z alone determined how to move the BASF load. *See id.*

Instead of creating a joint venture, KLLM Logistics subcontracted the BASF load to A&Z. A subcontractor–contractor relationship exists when an entity "enters into an agreement with a contractor, rather than the principal party whose performance is payment in exchange for . . . the completion of a project." *Texaco Expl. & Prod., Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 778 (5th Cir. 2006). These features are present here. A&Z contracted with KLLM Logistics, not BASF, the principal responsible for payment once the BASF load was transported.

## II.    *Vicarious Liability*

In analyzing the Dragnas' vicarious liability claim, the district court determined that A&Z was an independent contractor. The Dragnas' brief on appeal makes alternative arguments. They claim that A&Z was not an independent contractor, but an employee of KLLM Logistics. They also claim that even if A&Z was an independent contractor, KLLM Logistics exercised sufficient operational control over A&Z to create vicarious liability.

We agree with the district court that A&Z was an independent contractor. Under Louisiana law, principal and independent contractor relationships are "in large measure determined by the terms of the contract itself." *Ham v. Pennzoil Co.*, 869 F.2d 840, 842 (5th Cir. 1989). The contract here stated A&Z was an independent contractor. Louisiana law also considers such matters as whether: "the contract calls for [a] specific piece [of] work as a unit"; the contractor is free to use its own methods to achieve the results; the contract sets a specific price for an undertaking to be completed by a specific time or for a specific duration; the contract cannot be terminated by either party without liability for breach; and most importantly, the principal does not

5

retain the right to control how the job is completed. *Perkins v. Gregory Mfg. Co.*, 671 So. 2d 1036, 1038–39 (La. Ct. App. 1996). These considerations also indicate that A&Z was an independent contractor. KLLM Logistics selected A&Z for specific loads, and A&Z would receive payment in exchange for the completion of each job. A&Z selected its own driver to transport the load. KLLM Logistics did not control A&Z drivers' routes or drive times.

A principal like KLLM Logistics is only liable for an independent contractor's negligence if the principal retains the right to operational control over the independent contractor.[3] *See LeJeune v. Shell Oil Co.*, 950 F.2d 267, 270 (5th Cir. 1992). Operational control exists when the principal retains the right to "direct supervision over the step-by-step process of accomplishing the work." *Id.* To show operational control, the Dragnas offered evidence that A&Z drivers had to call KLLM Logistics to check-in or for emergencies. If A&Z failed to make such calls, it was subject to penalties or fines. The district court held that this evidence was insufficient to show operational control. We agree.

Generally, a right to receive reports or check progress fails to show a right to operational control. *See id.* The check-in calls and emergency calls, and any resulting penalties for failure to make such calls, create a contractual right to receive reports and a remedy if A&Z does not comply. Operational control requires more: there must be "such a retention of right of supervision that the contractor is not entirely free to do the work in his own way." *Id.* (quoting *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th Cir. 1989)). The Dragnas do not offer any evidence of such a right of control. A&Z was entitled to transport the BASF load as it saw fit as long as the load arrived at its destination on time. There is no evidence to support vicarious liability.

---

[3] The other basis for principal liability – an independent contractor's performance of ultrahazardous activities – does not apply here. *See LeJeune v. Shell Oil Co.*, 950 F.2d 267, 270 (5th Cir. 1992).

No. 15-30216

III.    *Negligent Hiring of an Independent Contractor*

Interpreting the limited Louisiana case law, the district court determined that "a claim for negligent hiring of an independent contractor is viable only when there are facts that the principal had knowledge at the time of the hiring that the contractor was irresponsible." Under this interpretation, the district court required the Dragnas to show KLLM Logistics knew A&Z had safety problems, rather than that KLLM Logistics should have known, a typical negligence inquiry. The district court held that the Dragnas could not show KLLM Logistics had such knowledge.

At least two Louisiana appellate decisions appear to support the district court's interpretation that actual knowledge is required in Louisiana to support a negligent hiring claim. *See Guillory v. Conoco, Inc.*, 521 So. 2d 1220, 1224–25 n.1 (La. Ct. App. 1988); *see also Perkins*, 671 So. 2d at 1040 (following *Guillory*). *Guillory*, though, relied on two Louisiana appellate court decisions that looked to what the principal knew or should have known. *See* 521 So. 2d at 1225 (citing *Hemphill v. State Farm Ins. Co.*, 472 So. 2d 320, 324 (La. Ct. App. 1985) and *Evans v. Allstate Ins. Co.*, 194 So. 2d 762, 767–68 (La. Ct. App. 1967)). Another Louisiana appellate court decision also characterizes the standard for negligent hiring as what the principal knew or should have known. *Certified Cleaning & Restoration, Inc. v. Lafayette Ins. Co.*, 67 So. 3d 1277, 1284 (La. Ct. App. 2011). Louisiana law looks, in part, to the principal's previous results with the independent contractor to determine possible negligence. *See Perkins*, 671 So. 2d at 1040. We need not decide whether actual knowledge is required because the Dragnas have not shown evidence to create a genuine dispute of material fact that KLLM Logistics even should have known of disqualifying information.

We review the information available to KLLM Logistics at the time it selected A&Z in evaluating what it knew or should have known. *See Certified*

*Cleaning & Restoration*, 67 So. 3d at 1282–84. KLLM Logistics had selected A&Z twice in 2011 without any problems. From its review of Carrier411, KLLM Logistics knew that A&Z was "unrated," but the parties agree that "unrated" only meant the Department of Transportation had not audited the motor carrier to establish a safety rating. Further, Carrier411 revealed A&Z's BASIC scores. The Dragnas argue that the three high BASIC scores, especially the unsafe driving score, support that KLLM Logistics should have known that A&Z had safety problems.

The relevant question in this case, though, is what KLLM Logistics knew or should have known about BASIC scores and their possible correlation with actual safety in November 2011. The Carrier411 report that KLLM Logistics downloaded before it initially hired A&Z in March 2011 gives no indication of how to use BASIC scores. BASIC scores had been made publicly available in December 2010, less than a year before the November 2011 accident. The Dragnas' expert testimony about whether the BASIC scores actually do correlate with unsafe driving does not address whether KLLM Logistics knew or should have known of that possible correlation in November 2011.

The only evidence shedding light on what KLLM Logistics knew in November 2011 about BASIC scores is its bell-curve approach to handling above-threshold scores. It selected motor carriers with less than three above-threshold BASIC scores and rejected those with more than three above-threshold scores. For a motor carrier with three above-threshold scores, KLLM Logistics usually had an internal discussion or talked to the motor carrier about its scores before selecting it. This policy suggests that KLLM Logistics was concerned that multiple above-threshold BASIC scores could indicate safety problems because it rejected carriers with more than three high scores. For motor carriers with only three high scores, however, KLLM Logistics's policy was not to consider these motor carriers categorically unsafe. The

Dragnas assert that KLLM Logistics should have investigated further because A&Z's three high scores should have raised concern. The Dragnas had no evidence, however, that in November 2011, KLLM Logistics knew or should have known enough about BASIC scores such that three above-threshold scores should have disqualified A&Z. Instead, what is important is that KLLM Logistics's previous experience with A&Z gave no reason for concern. *See Perkins*, 671 So. 2d at 1040.

The Dragnas' claim that KLLM Logistics was negligent in failing to follow internal policy also fails. Under Louisiana law, an internal policy does not necessarily establish the applicable standard of care. *See Rodriguez v. New Orleans Pub. Serv., Inc.*, 400 So. 2d 884, 886–88 (La. 1981). The Dragnas must show some evidence that KLLM Logistics breached the applicable standard of care in deciding to select a motor carrier with three above-threshold BASIC scores, rather than that it failed to follow an internal policy. The Dragnas have failed to meet this burden because they offer no evidence that demonstrates KLLM Logistics knew or should have known in November 2011 that the three high BASIC scores indicated A&Z was unsafe.

AFFIRMED.