# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 15, 2022

Lyle W. Cayce
Clerk

No. 21-30379

---

Progressive Paloverde Insurance Company,

*Plaintiff*,

*versus*

BJ Trucking Earthmover, L.L.C.

*Defendant*,

_____

Kimberly Hershey,

*Plaintiff—Appellant*,

*versus*

National Railroad Passenger Corporation (Amtrak);
Progressive Paloverde Insurance Company; Heck
Industries, Incorporated; Illinois Central Railroad
Company,

*Defendants—Appellees*,

Heck Industries, Incorporated,

*Defendant—Appellee - Appellant*,

No. 21-30379

GRAY INSURANCE COMPANY,

*Third Party Defendant—Appellee - Appellant*,

INDUSTRIAL AGGREGATES OF THE FLORIDA PARISHES, L.L.C.,

*Appellee*,

_____

JONETTE NAGRA,

*Plaintiff—Appellant*,

*versus*

PROGRESSIVE PALOVERDE INSURANCE COMPANY; HECK INDUSTRIES, INCORPORATED; NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK); ILLINOIS CENTRAL RAILROAD COMPANY,

*Defendants—Appellees*,

HECK INDUSTRIES, INCORPORATED,

*Defendant—Appellee - Appellant*,

GRAY INSURANCE COMPANY,

*Third Party Defendant—Appellee - Appellant*,

INDUSTRIAL AGGREGATES OF THE FLORIDA PARISHES, L.L.C.,

*Appellee*,

No. 21-30379

_____

DEREK LAGARDE

*Plaintiff,*

*versus*

HECK INDUSTRIES, INCORPORATED,

*Defendant—Appellant,*

GRAY INSURANCE COMPANY,

*Third Party Defendant—Appellant,*

*versus*

PROGRESSIVE PALOVERDE INSURANCE COMPANY,

*Third Party Defendant—Appellee,*

_____

KATY JENKINS,

*Plaintiff,*

*versus*

HECK INDUSTRIES, INCORPORATED,

*Defendant—Appellant,*

v.

PROGRESSIVE PALOVERDE INSURANCE COMPANY,

*Third Party Defendant—Appellee.*

No. 21-30379

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC Nos. 2:19-CV-12840, 2:19-CV-13010,
2:19-CV-13011, 2:19-CV-13082, 2:20-CV-392

---

Before Smith, Wiener, and Southwick, *Circuit Judges.*

Jacques L. Wiener, Jr., *Circuit Judge*:[*]

This case arises from an intersectional collision between an Amtrak train and a truck pulling a trailer. The truck was being driven by Bobby Jenkins who died in the accident. It occurred when, despite warning markers, he failed to stop at the point where the private road on which he was driving crossed the railroad track.

## I. Background

A. The Accident

On the day of the collision, Jenkins was hauling sand in Southeastern Louisiana. He was driving a semi-truck pulling a dump trailer. Both the truck and trailer were owned by BJ Trucking Earthmover, LLC ("BJ Trucking") of which Jenkins was the only member. The twenty-seven tons of sand he was hauling came from the Fluker Pit which is on property leased from Fluker Farms, Inc. by Industrial Aggregates of the Florida Parishes, L.L.C. ("Industrial Aggregates"). The private road on which Jenkins was driving was allegedly owned by Kent Enterprises, LLC ("Kent").[1]

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

[1] Kent was dismissed with prejudice from this appeal on the joint motion of Kimberly Hershey, Jonette Nagra, and Kent.

Jenkins attempted to cross the railroad track at DOT#930094V. The crossing is marked by two stop signs and two "cross bucks." Illinois Central Railroad, Co. ("IC/CN") owns the track on which the Amtrak train was traveling at the time. The train was traveling at the permitted track speed of 79 miles per hour.

Jenkins neither stopped at the crossing nor slowed down as he approached it. The district court accurately summarized the video surveillance recorded by the train: "While approaching the [c]rossing, Bobby Jenkins ignored the stop sign and crossbucks and did not slow down." Jonette Nagra, the train's engineer, sounded the train's horn and applied its emergency brake, but to no avail. Jenkins drove into the crossing, and he and the vehicle were struck by the train.

Jenkins's widow, Katy Jenkins, filed the original lawsuit in state court. The suit was subsequently removed on the basis of federal-question jurisdiction. A series of related cases were then consolidated.

Plaintiff Derek Lagarde, a passenger on the train, claimed injuries. Amtrak employees Nagra and Kimberly Hershey, the train's lead service attendant, also claimed injuries.

Progressive Paloverde Insurance Company ("Progressive") insured the truck that Jenkins was driving. Heck Industries, Inc. ("Heck") was alleged to have been Jenkins's employer at the time of the accident, but Heck insists that Jenkins was working as its independent contractor.

Heck submitted a defense and indemnity claim to Progressive because Heck was named as an additional insured on the Jenkins policy. Gray Insurance Co. ("Gray") insured Heck, but maintains that its policy provides only excess coverage for Heck. Gray contends that the Progressive policy should be primary. Progressive filed a declaratory judgment complaint to

No. 21-30379

determine whether it (Progressive) owed defense or indemnity to any of the named parties.

In a series of orders granting summary judgment, the district court drew several conclusions: (1) "the sole cause of the collision between the truck driven by Bobby Jenkins, and operated by Bobby Jenkins and [BJ Trucking], was the negligence of Bobby Jenkins and [BJ Trucking];" (2) "Heck was not an employer of Bobby Jenkins or [BJ Trucking];" (3) "Progressive's non-trucking insurance policy did not cover the 1998 Peterbilt truck driven by Bobby Jenkins at the time of the collision;" and (4) "Industrial Aggregates breached no duty to maintain the railroad crossing."

Neither Nagra nor Hershey brought claims against Industrial Aggregates or Gray.[2] A party who does not assert a claim against a defendant in the district court cannot challenge the dismissal of such a defendant from the case on appeal.[3] No appellant has standing to challenge Industrial Aggregates's or Gray's dismissal. Their dismissal stands.

B. The Parties

| Party | Position |
| --- | --- |
| Bobby Jenkins | Motorist who died in the train-truck collision. |
| Katy Jenkins | Bobby's widow who commenced the state court litigation, but who — once the case was removed to federal court — did not appeal the district court's decisions on summary judgment. |

---

[2] The passenger, Lagarde, did not appeal.

[3] *Stockstill v. Petty Ray Geophysical*, 888 F.2d 1493, 1496 & n.2 (5th Cir. 1989).

No. 21-30379

| BJ Trucking | Bobby Jenkins's LLC of which he was the sole member and which did not appeal the district court's decisions. |
|---|---|
| Industrial Aggregates | Lessee of the land containing the Fluker Pit where Jenkins picked up the sand he was hauling at the time of the accident.<br><br>No appellant has standing to challenge its dismissal from the case. |
| Kent | The alleged owner of the private road between the Fluker Pit and crossing. Kent was dismissed from this appeal by joint motion. |
| Amtrak | Operated the passenger train involved in the collision.<br><br>Supports the district court's judgment that Jenkins was solely responsible for the collision. |
| IC/CN | Owner of the track at the point of collision. |
| Jonette Nagra and Kimberly Hershey | Engineer and lead service attendant, respectively, on the train.<br><br>Both challenge the district court's decisions that: (1) Jenkins was solely responsible for the accident and (2) Jenkins was not an employee of Heck . |
| Derek Lagarde | Passenger on the train. Did not appeal the district court's rulings on summary judgment. |

No. 21-30379

| Heck | Alleged to be Jenkins's employer at the time of the accident.<br><br>Appealing the district court's decision that Progressive did not provide coverage for the Jenkins truck at the time of the accident. |
|---|---|
| Progressive | Insurer that issued the policy covering Jenkins's truck, but defending the district court's decision that the policy's non-trucking exclusion applies. |
| Gray | Heck's insurer.<br><br>Defending the district court's decision that Jenkins was not an employee of Heck, but appealing the district court's decision that Progressive's policy does not cover the accident. |

C. Issues on Appeal:

1. Did the district court err in granting summary judgment holding that Jenkins was the sole cause of the collision?

2. Did the district court err in holding that Jenkins was not an employee of Heck?

3. Did the district court err in holding that Progressive's non-trucking exclusion barred its policy's coverage for this accident?

## II. Delay of Summary Judgment

As an initial matter, Hershey and Nagra contend that summary judgment should have been delayed because of the COVID-19 pandemic

No. 21-30379

scheduling challenges. Federal Rule of Civil Procedure 56(d) allows for the extension of time for discovery if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Neither Hershey nor Nagra filed such a motion in the district court. We review that court's decision whether or not to suspend summary judgment to permit discovery for abuse of discretion.[4]

The district court did not abuse its discretion by not delaying its entry of summary judgment to allow additional discovery. It rejected Katy Jenkins's request for additional time for discovery because she "failed to submit a plausible basis for believing that further discovery will lead to specified facts that will affect the outcome of this motion for summary judgment." The district court was in the best position to determine if further time was warranted and, seeing no error, we defer to its decision.

## III.  Standard of Review

We review summary judgments de novo.[5] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6]

## IV. Cause of the Collision

Hershey and Nagra brought their claims under the Federal Employers Liability Act ("FELA") because they were Amtrak employees at the time of the accident.[7] FELA "provides the exclusive remedy for a railroad employee engaged in interstate commerce whose injury resulted from the negligence of

---

[4] *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010).

[5] *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008).

[6] FED. R. CIV. P. 56(a).

[7] 45 U.S.C. § 51.

9

the railroad."[8] Under FELA, the case should go to a jury if "employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought."[9] "This standard is highly favorable to the plaintiff, and recognizes that the FELA is protective of the plaintiff's right to a jury trial."[10] A FELA plaintiff nevertheless has the burden to "provide evidence of 'all the same elements as are found in a common law negligence action.'"[11] "[A]warding summary judgment to the defendant railroad is appropriate '[o]nly when there is a complete absence of probative facts' to support a jury verdict in the plaintiff's favor."[12]

Under Louisiana law, a motorist approaching a railroad crossing marked by a stop sign must "stop" and may not "proceed until he can do so safely."[13] When the crossing is marked by a cross buck, such a motorist must "listen and look in both directions along such track for any approaching train and for signals indicating the approach of a train."[14] He must "yield the right-of-way to any approaching train and then shall proceed only upon exercising due care and upon being sure that it is safe to proceed."[15] The Louisiana Supreme Court has held that, "[a]s a general rule, motorists approaching a railroad crossing must look and listen for possible oncoming trains before

---

[8] *Gray v. Ala. Great S. R.R. Co.*, 960 F.3d 212, 215 (5th Cir. 2020).

[9] *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692 (2011) (quoting *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957)).

[10] *Wooden v. Mo. Pac. R.R. Co.*, 862 F.2d 560, 561 (5th Cir. 1989).

[11] *Gray*, 960 F.3d at 215-16 (quoting *Armstrong v. Kan. City S. Ry. Co.*, 752 F.2d 1110, 1113 (5th Cir. 1985)).

[12] *Id.* at 216 (second alteration in original).

[13] La. Stat. § 32:171(A).

[14] *Id*. § 32:175(A).

[15] *Id.*

No. 21-30379

traversing the crossing."[16] A motorist's failure to comply with these duties suffers legal consequences: "A motorist negotiating a railroad crossing is burdened with the responsibility of seeing and hearing that which he could have seen and heard, and he is presumed in law to have seen and heard what he could have seen and heard."[17]

Again, the railroad crossing in this case was marked with two stop signs and two cross bucks. The train's video evidence shows that Jenkins neither stopped nor slowed as he approached the crossing. The district court did not err in holding that Jenkins was solely responsible for the collision.[18]

Under FELA, a railroad is responsible for the wrongdoing of its agent.[19] Hershey and Nagra contend that Amtrak should have operated a safer railroad crossing. They allege that IC/CN is an agent of Amtrak because it controls the track at the crossing and is in a contractual agreement with Amtrak.

Neither the district court nor we see any defect in the crossing. We assume therefore, without deciding, that IC/CN is an agent of Amtrak and that Amtrak is responsible for any defect in the crossing.

---

[16] *Lejeune v. Union Pac. R.R.*, 97-1843, p. 6 (La. 4/14/98); 712 So. 2d 491, 494.

[17] *Ryder v. Union Pac. R.R. Co.*, 945 F.3d 194, 202 (5th Cir. 2019) (quoting *Glisson v. Mo. Pac. R.R. Co.*, 165 So. 2d 289, 291 (1964)).

[18] *See Alfaro v. Nat'l R.R. Passenger Corp.*, 553 F. App'x 446, 447 (5th Cir. 2014) (affirming summary judgment in an unpublished memorandum opinion when "[a] video camera on the train recorded the entire incident and showed that [the motorist] failed to stop, or slow, at the STOP sign before approaching the railroad tracks, driving straight into the path of the oncoming train").

[19] *Armstrong*, 752 F.2d at 1113 ("Under the Act, a railroad will be liable if its negligence or its agent's negligence played any part, even the slightest, in producing the employee's injury.").

11

Hershey and Nagra admit that the crossing "was minimally marked," but rely on the opinion of their expert that, if the crossing had been equipped with a gate and lights, the crash would not have occurred. They also claim that there have been other crashes and near misses at the same crossing, but the parties dispute whether there is evidence of such assertions in a form that would be admissible at trial to support this claim.

At least one Louisiana appellate court has held that a railroad has a duty to operate a crossing "such that it can be safely traversed by motorists using reasonable care."[20] "[A]ny extra warning device would be an 'unusual precaution[]' required only in exceptional circumstances."[21] Amtrak has met that burden here by providing a crossing that can be traversed by a motorist who uses reasonable care. That is especially true in this case because Jenkins was familiar with the crossing: He had crossed it on a near-daily basis over several years.

## V. Employee or Independent Contractor?

Employers are responsible for the damage caused by their employees,[22] but a principal cannot be held liable for the acts of an independent contractor.[23] We agree with the district court that Jenkins was

---

[20] *Dehart v. Burlington N. & Santa Fe R.R. Co.*, 03-279, p.16 (La. App. 5 Cir. 10/28/03); 860 So. 2d 248, 257. For an informative discussion on the confusion surrounding what duties a railroad has at a private versus public road, see *Ryder*, 945 F.3d at 200-01. It is sufficient for this case, however, that Jenkins neither stopped nor slowed before entering the crossing.

[21] *Id.* at 200 (quoting *Rivere v. Union Pac. R.R. Co.*, 93-1132, p.6 (La. App. 1 Cir. 10/7/94); 647 So. 2d 1140, 1145).

[22] LA. CIV. CODE art. 2320 ("[E]mployers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.").

[23] *Thompson v. Winn-Dixie Montgomery, Inc.*, 2015-0477, p. 12 (La. 10/14/15); 181 So. 3d 656, 665 ("The court of appeal correctly noted that, generally, a principal is not

No. 21-30379

not Heck's employee. Heck, therefore, is not responsible for Jenkins's actions.

The question whether an actor is an employee or an independent contractor may be resolved as a matter of law when the facts are not in dispute.[24] "The element of control that distinguishes an employee from an independent contractor focuses on whether the purported employer had the right to control the method and means by which the individual performed the work tasks."[25] It matters less what supervision and control is actually exercised; "the important question is whether, from the nature of the relationship, the right to do so exists."[26] We follow the Louisiana Supreme Court's guidance in considering the following factors to determine whether the relationship of principal and independent contractor exists:

> (1) there is a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered;

---

liable for the offenses committed by an independent contractor while performing its contractual duties.").

[24] *See Prater v. Porter*, 98-1481, p. 4-8 (La. App. 3 Cir. 3/3/99); 737 So. 2d 102, 104-06; *Crews v. Blalock*, 99-311, p. 1-4 (La. App. 3 Cir. 11/3/99); 746 So. 2d 761, 762-64; *Perkins v. Gregory Mfg. Co.*, 95-01396, p. 4-6 (La. App. 3 Cir. 3/20/96); 671 So. 2d 1036, 1038-40; *Dragna v. KLLM Transp. Servs., L.L.C.*, 638 F. App'x 314, 318-19 (5th Cir. 2016) (unpublished).

[25] *Hillman v. Comm-Care, Inc.*, 2001-1140, p. 12 (La. 1/15/02); 805 So. 2d 1157, 1164; *Hickman v. S. Pac. Transp. Co.*, 262 So. 2d 385, 391 (La. 1972) (explaining that the principal test to determine whether an individual is an employee or independent contractor is "the control over the work reserved by the employer.").

[26] *Hickman*, 262 So. 2d at 391.

(4) there is a specific price for the overall undertaking agreed upon; and (5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.[27]

A contractee-independent contractor relationship presupposes a contract between the parties. It likewise presupposes the independent nature of his business, and is not exclusive as to the means whereby it is accomplished. It should appear that the contract calls for a specific piecework as a unit to be done according to his own methods, without being subject to the control and direction, in the performance of the service, of his employer, except as to the result of the services to be rendered.[28]

No one factor is controlling, but "the totality of the circumstances must be considered."[29] "[T]he burden of proof is on the party seeking to establish an employer-employee relationship."[30]

There was no written contract between Heck and Jenkins: Either could have terminated the relationship at will. Jenkins was one of some fourteen motorists who hauled for Heck. Each of the motorists would call a prerecorded telephone line to get the assignments for the next day. After a motorist picked up his first load of the day, a "batchman" on site would give that motorist directions as to what to load next and where to haul it.

Heck did not have any control over the manner in which Jenkins (or, we assume, any of the other motorists) completed his work. Each motorist

---

[27] *Tower Credit, Inc. v. Carpenter*, 2001-2875, p. 6 (La. 9/4/02); 825 So. 2d 1125, 1129.

[28] *Amyx v. Henry & Hall*, 79 So. 2d 483, 486 (La. 1955).

[29] *Hillman*, 2001-1140 at p. 9; 805 So. 2d at 1163.

[30] *Id.*

would decide whether he wanted to work on a given day and, if so, how many loads he wanted to haul. Motorists could expect to haul three or four loads per day if they cared to do so. They did not have to deliver the loads at any particular time. The only "rules" that were explained to the motorists were safety restrictions for driving around the plants and the requirement of wearing personal protective equipment because of the COVID-19 pandemic. Heck did not require a copy of Jenkins's driver's license, check for any restrictions on his license, or run a background check.

Heck based payment on each discrete load. Each motorist was paid a freight rate that was determined by the cost of gas and the weight of the load hauled. Heck sent out 1099's at the end of the year and did not withhold taxes. It did not provide any equipment or personnel to Jenkins. Neither did it pay for gas or provide uniforms or safety equipment. Loads picked up by Jenkins would be charged to Heck's account at the pit.

The parties dispute whether Jenkins was hauling for Heck at the time of the accident. Whether he was or was not, however, Jenkins was still operating as an independent contractor. At least one Louisiana Circuit Court has held that independent-contractor status is not destroyed simply because an independent motorist is directed "where to deliver the loads he hauls."[31] Heck's informing the motorists where to deliver their loads is not enough to establish an employment relationship. Jenkins controlled his own schedule, and either he or Heck could have terminated the relationship at any point. The district court is correct that Heck did not exercise — and did not have the ability to exercise — control over the manner and means in which Jenkins completed his work.

---

[31] *Tate v. Progressive Sec. Ins. Co.*, 2008-0950, p. 11 (La. App. 4 Cir. 1/28/09); 4 So. 3d 915, 921.

## VI. Insurance

Jenkins's policy with Progressive named Heck as an additional insured. Heck pleaded that Progressive was "obligated to defend, indemnify, and insure Heck" for the accident. However, the district court agreed with Progressive that its non-trucking exclusion barred coverage of Heck. "We review the legal question of the district court's interpretation of an insurance contract de novo, as well as its determination of state law."[32]

About a year before the instant accident, Jenkins telephoned Progressive to change his policy. Jenkins requested that his coverage be converted to "bobtail insurance" because, he stated, Heck had its "own insurance on their trailer and what I need is some bobtail insurance, the same coverage."

Progressive's customer service representative explained to Jenkins that they did not issue bobtail insurance, but that they did issue "what's called non-truck, which means you're pulling under their authority." Jenkins clarified: "And I still have a million dollar coverage on the truck. Right?" The representative responded: "Right. Your – what non-truck is, or bobtail, is they're covering your primary liability when you're pulling their load and then you have the million when you're not under dispatch, yes, on the vehicle as well, plus the comp and collision." Jenkins's annual premium was reduced by more than $17,000 as a result of that change.

A Form 1797 was added to Jenkins's policy, changing the definition of "insured" to state: "[I]nsured does not include anyone engaged in the

---

[32] *Blakely v. State Farm Mut. Auto. Ins. Co.*, 406 F.3d 747, 750 (5th Cir. 2005) (italics omitted).

No. 21-30379

business of transporting property by auto for hire that is liable for your conduct." The following "Trucking Use" exclusion was added:

> Coverage under this Part I, including our duty to defend, does not apply to an insured auto or any attached trailer while operated, maintained, or used:
>
> a. to carry property or while such property is being loaded or unloaded from the insured auto or an attached trailer; or
>
> b. in any business or for any business purpose.

At the time of the accident, Jenkins was hauling twenty-seven tons of sand. The non-trucking exclusion applies because Jenkins was indisputably hauling property at the point of collision.

Heck attempts to question the legality of Progressive's non-trucking exclusion, but it has been upheld by at least one Louisiana appellate court.[33] An "insurer owes its insured a duty of good faith,"[34] but such duty is not without limits. The Louisiana Supreme Court has held that "the insurance agent/broker ha[s] no duty to recommend coverage amounts or to determine whether the client is underinsured; rather the client ha[s] a duty to determine the amounts of coverage needed and to review the policy upon receipt to determine that those needs are met."[35] Here, Jenkins represented that Heck would be supplying the primary liability insurance while he (Jenkins) was under load. Based on the representation that Jenkins would otherwise be covered, Progressive cannot be said to have breached any good-faith duty.

---

[33] *George v. Suarez*, 2018-0484, p. 8-9 (La. App. 1 Cir. 1/10/19); 2019 WL 168526, at *4.

[34] *Smith v. Citadel Ins. Co.*, 2019-00052, p.6 (La. 10/22/19); 285 So. 3d 1062, 1067.

[35] *Isidore Newman Sch. v. J. Everett Eaves, Inc.*, 2009-2161, p.1 (La. 7/6/10); 42 So. 3d 352, 353.

Heck also contends that Jenkins's change in the policy constituted a cancellation that triggered Progressive's duty to notify Heck. Heck notes that Progressive "continued to send H[eck] additional insured endorsements which looked the same and used the same policy number, even though H[eck]'s coverage had actually been cancelled."

But Jenkins's policy was never canceled. "Cancellation" is defined as "termination of a policy at a date other than its expiration date."[36] Here, Jenkins requested a *change* in the policy, not a *cancellation* of his coverage. And such change was limited by Jenkins's direction. There was therefore no cancellation of insurance that would require notice. But even if we were to assume arguendo that this change constituted a cancellation, Progressive was only required to provide notice to the first-named insured, Jenkins — not to the additional insured, Heck.[37]

The district court was correct in holding that Progressive's policy did not cover Jenkins's truck or its trailer during this accident because those vehicles were unquestionably hauling property. And, that function was clearly excluded from coverage.

## VII. Conclusion

No party in this appeal has standing to challenge the dismissals of Industrial Aggregates or Gray. Their dismissals, therefore, must stand. Similarly, Kent was properly dismissed from this appeal by a joint motion.

As for the remaining parties, we find no error in the district court's well-reasoned decisions and ultimate holdings that:

---

[36] LA. STAT. § 22:1267(B)(1).

[37] *Id.* (C)(1).

No. 21-30379

1. Jenkins was solely at fault for the collision so Hershey's and Nagra's claims against Amtrak and IC/CN were properly dismissed.

2. Since Jenkins was not an employee of Heck, it could not be held responsible for Jenkins's actions. Hershey's and Nagra's claims against Heck were therefore properly dismissed.

3. Heck's counterclaim for defense and indemnity was properly dismissed because the non-trucking exclusion in Progressive's policy barred coverage of Jenkins's truck that was hauling property at the time of the collision.

The judgment of the district court is, in all respects, AFFIRMED.